**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

FILED

Mar 10 2014, 10:03 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**VICTORIA L. BAILEY**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JERIMAINE CARTER, | ) | |
| Appellant-Defendant, | ) | |
| vs. | ) | No. 49A05-1307-CR-345 |
| STATE OF INDIANA, | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Sheila A. Carlisle, Judge
The Honorable David M. Seiter, Commissioner
Cause No. 49G03-1205-FA-28286

**March 10, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Jerimaine Carter appeals his sentence for attempted murder. Carter raises one issue which we revise and restate as whether the trial court abused its discretion in sentencing him. We affirm.

FACTS AND PROCEDURAL HISTORY

During the evening hours of April 17, 2012, Indianapolis Metropolitan Police Officer Jeffrey Newlin heard a radio report of a person with a gun and headed toward the location of Officer Daniel Huber. While en route, Officer Newlin observed a person later identified as Carter, who was wearing dark clothes and a black White Sox hat, walking westbound "very frantically, very fast-paced . . . and . . . turning around, looking behind him like – it was just extremely odd." Transcript at 44. Officer Newlin continued to Officer Huber's location, and Officer Huber gave Officer Newlin a description of the person with a gun that matched the description of Carter.

Officer Newlin then searched for Carter and parked his vehicle ten to fifteen yards behind him. Officer Newlin turned on his overhead lights, and Carter immediately turned around and began walking toward Officer Newlin with his hands in his pockets. Officer Newlin opened his door, stood behind the door, and told Carter to take his hands out of his pockets. After three or four times verbal commands Carter removed his hands from his pockets. Once Officer Newlin saw that Carter did not have anything in his hands, he came out from behind his door. Carter then started moving his hands and said: "You got the wrong guy. I didn't do anything." Id. at 52. Officer Newlin talked to Carter and tried to calm him down. Officer Newlin then asked him to put his hands on top of his head to check him for weapons. Carter put his right hand to the top of his head, and

2

when Officer Newlin grabbed his right wrist and went to grab his left wrist, Carter started jerking away and pulling away from Officer Newlin. Carter put his right hand in his pocket, and Officer Newlin pushed him away, drew his weapon, started backing up, and told Carter to remove his hands from his pockets. Carter pulled a semi-automatic handgun out of his pocket and shot twice when he was four to six feet away from Officer Newlin. Officer Newlin returned fire three times, continued to back up, and fell down after his left foot caught "a lip of the grass." Id. at 57. Carter, who was six to eight feet away, looked at his gun, worked the slide, pulled the trigger, pointed the gun at Officer Newlin, and attempted to fire the gun. Officer Newlin then fired his gun three more times, and Carter turned around and ran westbound.

Officer Newlin jumped up, pursued Carter, and radioed Carter's description and location. Officer Newlin yelled "Stop. Police. Stop. Police." Id. at 61. Officer Newlin eventually closed in on him, and Carter looked back at Officer Newlin, pointed his gun, and pulled the trigger. Officer Newlin fired two more shots at him. Carter kept running, and Officer Newlin met Officer Gregory Shue and Sergeant Brian Clark. Carter raised his arm and tried to pull the trigger, and the police eventually shot and captured him following the foot pursuit.

On May 1, 2012, the State charged Carter with Count I, attempted murder as a class A felony; Count II, resisting law enforcement as a class D felony; and Count III, carrying a handgun without a license as a class A misdemeanor. On October 17, 2012, Carter filed a notice of insanity defense and motion for psychiatric examination to determine sanity and competence to stand trial. One of the reports indicated that Carter

3

presented with symptoms consistent with schizoaffective disorder but found he had the comprehension to understand the legal proceedings and capacity to assist in his defense. On January 3, 2013, the court entered an Order on Finding of Competency which stated that two disinterested psychiatrists/psychologists found him competent to stand trial.

On January 4, 2013, Carter filed a notice of self-defense. The jury found him guilty of attempted murder as a class A felony, guilty but mentally ill of resisting law enforcement as a class D felony, and guilty of carrying a handgun without a license as a class A misdemeanor.

At sentencing hearing, the court stated:

> And while nobody was physically hurt, I cannot imagine the terror that officer must have felt at the time that he's starring [sic] down the barrel of your gun and it's going click click because your gun jammed. You are frequent [sic]. You are frequent [sic] that it did. Because as much as it may be difficult to struggle with the events of that night, at least you're not wondering how's his wife and how's his children doing not having him around every night now. You don't have to wrestle with those demons.

Id. at 663. The court found Carter's mental health as a mitigator. The court also found the fact that Carter was injured as a mitigator but did not give it much weight because the injuries were a result of Carter's actions, and found the fact that no one else was physically hurt to be a mitigator. The court stated:

> I do think that there was a significant harm inflicted on that officer. The trauma of having somebody standing over him pointing a weapon and trying to pull the slide back and pulling the trigger. And I do find that that is greater than the elements necessary to prove the commission of the offense.

Id. at 665. The court also found Carter's criminal history and the fact that he violated probation as aggravators, and sentenced him to concurrent terms of thirty-four years for

4

attempted murder as a class A felony with thirty-two years served at the Department of Correction and two years served on community corrections, one and one-half years for resisting law enforcement as a class D felony, and one year for carrying a handgun without a license.

## DISCUSSION

The issue is whether the trial court abused its discretion in sentencing. Carter argues that he can find nowhere that Officer Newlin testified about a wife and children or made statements regarding having suffered significant harm or trauma. Thus, Carter contends that the trial court found an aggravating factor that has no support in the record. Carter argues that he has suffered from a severe mental illness for the entirety of his adult life, that the court relied heavily on the improper aggravator, and that it is unlikely that the trial court would have imposed the same sentence absent the improper aggravator. Carter also cites Felder v. State, 870 N.E.2d 554 (Ind. Ct. App. 2007), for the proposition that when a trial court abuses its sentencing discretion, the court on appeal can exercise its review and revise authority to amend the sentence without having to remand, and he suggests that this court should exercise this authority.

The State argues that one of the alleged invalid aggravating circumstances argued by Carter is not actually a factor that the trial court found as an aggravating circumstance. The State asserts that all the trial court was doing with the reference to the officer's wife and children was telling Carter how lucky he was that his gun jammed or he would be worrying about the consequences of having murdered a police officer and the effects that such a crime would have on the officer's family. The State also contends that the court's

5

finding that Officer Newlin suffered significant harm or trauma was "simply an expression of the seriousness of the nature of [Carter's] offense and that the harm suffered by the officer was greater than that required to assess the advisory sentence." Appellee's Brief at 10. The State contends that the court's view of the nature of the offense is nothing more than a reasonable inference from Officer Newlin's testimony, and points to an addendum to the presentence investigation report regarding the impact of the crime on Officer Newlin. The State argues that, even if the court abused its discretion with respect to these aggravators, this court can say with confidence that the trial court would have imposed the same sentence for the attempted murder of a police officer based on the remaining aggravating circumstances. Lastly, the State contends that to the extent Carter suggests that his sentence is inappropriate, Carter fails to develop a cogent argument under Appellate Rule 7(B), and that his sentence is not inappropriate.

We review the sentence for an abuse of discretion. Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." Id. A trial court abuses its discretion if it: (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence – including a finding of aggravating and mitigating factors if any – but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law." Id. at 490-491. If the trial court

6

has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." Id. at 491. The relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion. Id.

We agree with the State that the trial court's comment that Carter was fortunate that he did not shoot the officer did not constitute an aggravating circumstance found by the trial court. With respect to Carter's argument regarding the significant harm on Officer Newlin, we observe that the presentence investigation report ("PSI") contains an addendum which is a letter from the probation officer indicating that Officer Newlin called her and reported that Carter's action had affected him and he has thought about the incident every day since it occurred. Thus, we cannot say that this aggravator has no support in the record. Further, the trial court also found Carter's criminal history and the fact that he violated probation as aggravators, and Carter does not challenge these aggravators. We cannot say that the trial court abused its discretion in sentencing.

Because we find that the trial court did not abuse its discretion, we cannot say that Felder, as relied upon by Carter, is instructive. To the extent that Carter suggests that his sentence is inappropriate, we cannot agree. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to

persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Our review of the nature of the offense reveals that Carter struggled with Officer Newlin, shot twice at Officer Newlin when he was four to six feet away, attempted to fire his gun after Officer Newlin fell to the ground, and then ran. Carter ignored Officer Newlin's commands to stop, looked back at him, pointed his gun, and pulled the trigger. Carter again tried to pull the trigger at another point during the pursuit.

Our review of the character of the offender reveals that in 2009, the State charged Carter with aggravated assault as a felony, Carter was sentenced under the "First Offender Act," and multiple probation violation reports were filed. PSI at 4. Carter was also convicted of two counts of theft as misdemeanors in 2009. The PSI indicates that he noted that he sometimes agrees with the statement: "Do unto others before they do unto you." Id. at 8. The record indicates that Carter has been diagnosed with schizophrenia. The trial court found Carter's mental health as a mitigator, but also indicated that Carter's statement when he was approached by Officer Newlin of "I'm not the guy," indicated that he knew that the officer was indeed a police officer. Transcript at 662. The court also stated: "I think once the police pulled you over or stopped you, I think you panicked. I don't think it was caused by mental illness, I think you panicked. . . . Your motivation was getting away." Id. at 666. The PSI indicates that the results of Carter's risk assessment show that his overall risk assessment score puts him in the moderate risk to reoffend category.

After due consideration of the trial court's decision, we cannot say that the sentence of thirty-four years with thirty-two years in the Department of Correction and two years on community corrections for attempted murder and concurrent sentences for his other offenses is inappropriate in light of the nature of the offense and the character of the offender.

CONCLUSION

For the foregoing reasons, we affirm Carter's sentence.

Affirmed.

ROBB, J., and BARNES, J., concur.